CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
May 09, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:19-cr-103 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| ANTONIO WADDELL | ) | Chief United States District Judge |

## MEMORANDUM OPINION AND ORDER

Defendant Antonio Waddell, proceeding pro se, filed a motion titled as a "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)." (Dkt. No. 262.) He seeks release primarily on the basis of his family circumstances and also his rehabilitative efforts. Court-appointed counsel, who declined to file a supplemental motion at this time (Dkt. No. 274), and the United States has filed a response in opposition (Dkt. No. 276). For the reasons set forth herein, the motion will be denied.

Additionally, to the extent Waddell's motion could be construed as seeking relief under Amendment 821, that request also will be denied.

## I. BACKGROUND

Waddell pled guilty to two counts of a multi-count indictment. The first was Count 1, which charged him with conspiracy to distribute 500 grams or more of a mixture containing methamphetamine, 100 grams or more of a mixture containing heroin, 40 grams or more of a mixture containing fentanyl, and a measurable quantity of a mixture containing a detectable amount of cocaine. The second was Count 8, which charged him with distribution of heroin on a separate occasion. The remaining counts of the indictment against him were dismissed.

On November 23, 2021, the court sentenced him to a term of imprisonment of 135 months on each count, to run concurrently, and imposed a five-year supervised release term on each count, again to run concurrently. The court imposed the mandatory special assessment of

$100 on each count, and it did not impose a fine.  (Judgment, Dkt. No. 209.)

In his motion for compassionate release, Waddell explains that his elderly mother, who cares for his 16-year old son, has "deteriorating health."  (Mot. 8.)  He states that she "is no longer able to manage" his son's needs and that her "health has deteriorated significantly, leaving her physically unable to provide the supervision, structure, and emotional support" his son "requires."  (*Id.*)  According to Waddell, his son's "severe behavioral challenges . . . have worsened over time," and he has "demonstrated increasing defiance, truancy, and aggression." (*Id.*)  Waddell also states, albeit without any supporting detail, that "[t]he family has no other viable caregiver available."  (*Id.*)  Lastly, Waddell emphasizes his rehabilitation efforts while incarcerated.

The United States opposes the motion.  It argues first that Waddell has not alleged or shown extraordinary and compelling circumstances.  It then contends that even if the court were to find extraordinary and compelling circumstances, the 18 U.S.C. § 3553(a) factors do not support any reduction in Waddell's sentence.

## II.  DISCUSSION

### A.  Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances.  As amended by the First Step Act and in pertinent part,[1] the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the

---

[1] Prior to the First Step Act of 2018, only the Bureau of Prisons could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

> Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).  If a court finds extraordinary and compelling reasons for release, it must then consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence.  *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement[] issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  In 2023, the Commission issued an amended policy statement setting forth a non-exhaustive list of circumstances which may individually or in combination constitute "extraordinary and compelling" reasons for a sentence reduction.  *See* U.S.S.G. § 1B1.13.  Waddell's motion is governed by that policy statement.[2]

Waddell's motion under § 3582(c)(1)(A) thus requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The defendant bears the burden of showing that extraordinary and compelling reasons exist.  *See United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate

---

[2]  If the court were to reduce Waddell's sentence, it would be required to use the version of the policy statement in effect on that date.  U.S.S.G. § 1B1.10, appl. note 9.  The court thus analyzes his motion under the amended guidelines.

provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"). And "[a] movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence." *Centeno-Morales*, 90 F.4th at 279.

## B. Exhaustion

Based on the statements in Waddell's motion, it appears that he has properly exhausted his administrative remedies. In particular, he filed a request with the Bureau of Prisons and more than thirty days passed with no response. (Mot. 4.) In any event, the exhaustion requirement is a "'non-jurisdictional claim processing rule' that can be waived or forfeited if not timely raised." *United States v. Davis*, 99 F.4th 647, 653 n.2 (4th Cir. 2024) (quoting *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021)). The United States has not challenged exhaustion here, and so the court considers the issue waived. The court turns next to whether Waddell has shown "extraordinary and compelling" circumstances so as to render him eligible for a sentence reduction.

## C. Extraordinary and Compelling Reasons

As previously noted, Waddell appears to seek compassionate release on the basis that his mother is unable to adequately supervise his son, who is an older teenager and experiencing significant behavioral problems.[3] The Guidelines recognize a limited number of family circumstances that may constitute "extraordinary and compelling" reasons, one of which is "[t]he death or incapacitation of the caregiver of the defendant's minor child." U.S.S.G.

---

[3] The United States also suggests that Waddell may be seeking compassionate release on the grounds that there is no one else available to care for his mother. *See* U.S.S.G. § 1B1.13(b)(3)(C) (describing "the incapacitation of the defendant's parent when the defendant would be the only available caregiver" as a possible "extraordinary and compelling" reason for a reduction in sentence). The court does not construe Waddell's motion as advancing that basis for relief. But regardless, he has not shown extraordinary and compelling reasons on the basis of needing to care for his mother, either. As the United States cogently argues, he has not alleged—let alone presented any evidence—that she requires someone to care for her, nor has he alleged or shown that there is no other person available to care for her.

§ 1B1.13(b)(3)(A).  *See also* U.S.S.G. § 1B1.13(b)(3)(D) (also listing "circumstances similar to those" in subsections (A) through (C) involving "an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual").  It is worth noting, however, that courts "generally deny compassionate release when another suitable caregiver is available for a defendant's child."  *United States v. James*, No. 7:19-cr-00024, 2023 WL 6164018, at *3 (W.D. Va. Sept. 21, 2023).  *See also United States v. Sanchez*, No. 2:20CR00010, 2024 WL 1653769 (W.D. Va. Apr. 16, 2024) (denying a compassionate release claim under 1B1.13(b)(3)(A) when records submitted by the incarcerated individual indicated that there may be relative caregivers available to take custody of child); *United States v. Barlow*, No. 7:19-CR-00024-4, 2023 WL 2755598, at *3–4 (W.D. Va. Mar. 31, 2023) (denying compassionate release in a case where the child lived with her paternal aunt while both parents were incarcerated and emphasizing that the aunt's age (sixty years old), work outside the home, and exhaustion caring for the child do not constitute allegations of incapacitation).

In sum, "case law indicates that extraordinary and compelling circumstances based on the need to care for children are found only where the defendant is the only possible caregiver of the children needing care."  *James*, 2023 WL 6164018, at *3.  *But see United States v. Taylor*, No. 3:15-00009, 2020 WL 6532844, at *1 (S.D.W. Va. Nov. 3, 2020) ("[A]s the Court of Appeals suggested, the Court subsequently held that Mr. Taylor is not required to show that he is the *only* available caregiver to obtain relief") (emphasis added).

In rare cases, courts have granted release despite the existence of another suitable caregiver (meaning, other than the incarcerated individual).  *James* is one such case. In that case, the court found that James made a sufficient showing to demonstrate that her children's caregiving grandmother suffered from severe illness rendering her effectively incapacitated and

incapable of caring for the children. *James*, 2023 WL 6164018, at *4. James' grandmother, however, "[i]s 76 years old and suffers from . . . problems affecting her heart and chronic kidney disease. James' grandmother has told her that she is overwhelmed with taking care of the three boys . . . and James fears losing the boys to the foster care system." *Id.*; *see also United States v. Henriquez*, No. 1:15-cr-225-1, 2021 WL 5771543, at *3–5 (M.D.N.C. Dec. 6, 2021) (granting compassionate release despite the existence of an alternative caregiver where the court found defendant's familial circumstances extraordinary when considered in conjunction with his model behavior in prison, deep efforts at successful rehabilitation, work ethic, support of Bureau of Prison employees, and length of sentence served).

This case is not *James*. First of all, Waddell states that there is no other "viable caregiver" (Mot. 8); he does not state what criteria he has used to determine viability, and he has not stated that there are no other caregivers available, just not "viable" ones. Further, he has not alleged facts or provided evidence regarding his mother's health that show she is unable to care for his son, unlike the caregiver in *James*.

In addition to Waddell's failure to show the lack of any other caregiver, Waddell also does not adequately allege or show that his mother is incapacitated, which is a "high bar." *See James*, 2023 WL 6164018, at *4. Indeed, the Bureau of Prisons defines "incapacitation" in this context to mean that "the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement 5050.50, at 7. Further, unlike the caregiver in *James*, Waddell does not identify with specificity any serious health issues that would preclude his mother from caring for his son. And while he insists that he would better be able to guide and discipline his son, a failure to effectively control a teenager's behavior does not constitute "incapacitation."

The United States also contends that Waddell's allegations do not satisfy U.S.S.G.

§ 1B1.13(b)(5), to the extent he intends to rely on that subsection.  That provision states:

> Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b)(5).  The court agrees that Waddell's allegations—especially when combined with the lack of any supporting evidence—do not satisfy this provision, either.

Waddell also points to his rehabilitation while incarcerated.  He submits evidence of classes and courses he has completed, and he points to a minimal disciplinary record while in custody.  According to his attached documents, his only disciplinary convictions were for possession of unauthorized items (stamps and tobacco) in February 2023 and for interfering with count in July 2022.  (*See generally* Dkt. No. 262-6.)

Congress has specified "that rehabilitation *alone* cannot be considered an extraordinary and compelling reason for release, [but] it may be considered as one factor among several under § 3582(c)(1)(A)." *Davis*, 99 F.4th at 659 (citation omitted).  While occasionally rehabilitation has the potential to play a significant role in satisfying the "extraordinary and compelling" requirement, the evidence presented here is not the same type of robust rehabilitation that has been present in those cases, nor are Waddell's "other" reasons (his mother's difficulties in supervising his son) sufficient, even if considered together.

In *Davis*, for example, the court concluded that the district court erred in failing to address defendant's rehabilitation argument where defendant had a decade of mitigation evidence, including documentary evidence supporting his coursework and good behavior and a glowing letter from  his employer.  99 F.4th at 660–61.  Critically, though, Davis also would no longer have been a career offender and his guideline range would have changed from 188–235 months to 92–115 months, described by the appellate court as "substantial" changes in the law

that resulted in a "stark" sentencing disparity.  *Id.* at 661.  Not only does is Waddell's

rehabilitation evidence much more limited than the lengthy and substantial evidence of

rehabilitation in *Davis*, but those other mitigating circumstances are not present here.

For the foregoing reasons, the court does not find that Waddell has shown any

extraordinary and compelling basis rendering him eligible for a reduced sentence.  Furthermore,

as the court discusses next, even if he could establish such a basis, the court would not grant any

relief based on the § 3553(a) factors.

**D.  Section 3553(a) Factors**

When determining whether a sentencing reduction is warranted, the court must consider

any applicable sentencing factors under 18 U.S.C. § 3553.  Those factors include:

- the nature and circumstances of the offense;
- the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to deter criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational, vocational and other correctional treatment services;
- the kinds of sentences available and the sentencing range for his offense; and
- the need to avoid unwarranted sentence disparities.

18 U.S.C. § 3553(a).

The nature and circumstances of the offense weigh heavily against any reduction.

Waddell's offense involved large amounts of different types of drugs.  Although the PSR

declared he was responsible for an estimated converted drug weight of over 21,000 kilograms,

the court determined at sentencing that he was responsible for a lower amount of at least 13,608

kilograms.  Under either amount, his base offense level was 34.  (PSR ¶ 40, Dkt. No. 207;

Statement of Reasons, Dkt. No. 220.)  Moreover, he possessed a firearm during the course of the

offense, and the presence of firearms during drug transactions creates a great potential for

violence.

Additionally, Waddell already has received a sentence far below his potential sentencing exposure and significantly below his guideline range, as well. In particular, Waddell received a significant benefit from his guilty plea, in that the United States agreed not to file a notice under 21 U.S.C. § 851, which would have greatly increased his sentencing exposure. (PSR ¶ 95.) Further, his original guideline range was 188–235 months, but the court concluded—and the United States agreed—that his criminal history was overstated, and so the court considered a range of 168 to 210 months when determining his sentence. Then, the court varied downward even from that guideline range to a sentence of 135 months, both to account for his living on the streets from a young age and becoming addicted to drugs at an early age, and to avoid unwarranted sentencing disparities with one of his co-defendants. (Statement of Reasons 5.)

In considering Waddell's personal characteristics, the court notes his difficult upbringing and addiction, although both of these were taken into account when it sentenced him and varied downward. His criminal history is not favorable. While a criminal history category of IV overstated his record, Waddell has a lengthy history of offenses, including a conviction for carrying a concealed weapon on two occasions in 2009, drug possession, and conspiracy to distribute cocaine base, which resulted in a 105-month sentence in federal court that was later reduced to 84 months. He was on supervised release for that offense when he committed the offense here. (*See generally* PSR ¶¶ 50–64, 66.) In light of that history and the fact that a previous sentence of more than seven years' incarceration did not deter him from similar conduct, a significant sentence remains needed to promote respect for the law, provide for just punishment, protect the public, and deter Waddell and others. Waddell has served less than half of his sentence, and releasing him now would not be sufficient to serve those purposes.

As even the United States has recognized, the circumstances in which Waddell's mother

and son find themselves are no doubt difficult.  (*See* Opp'n 1 (noting that the United States "sympathizes with Waddell's family circumstances)).  But that is true of many offenders with children who are sentenced to lengthy terms of imprisonment.  And in considering *all* of the § 3553(a) factors, as it must, those factors simply do not support reducing Waddell's sentence at all, let alone reducing it to time served and ordering his immediate release.

For the foregoing reasons, the court will deny Waddell's motion for a reduced sentence under § 3582(c)(1)(A).

## E.  Amendment 821

It does not appear to the court that Waddell is seeking relief under Amendment 821 to the Sentencing Guidelines, but the U.S. Probation Office has filed an Addendum on that issue, and the United States has addressed it.  Thus, the court also briefly explains why he is not entitled to relief under that Amendment.

The Probation Office considers Waddell to be technically eligible for relief under Part A of Amendment 821.  (Dkt. No. 275.)  Part A limits the overall criminal history impact of "status points," resulting in a reduced criminal history score for certain offenders.  U.S.S.G. § 4A1.1(e).  Under the revised guideline, if a defendant received at least two status points, then the individual's status points are decreased by one point for individuals with seven or more criminal history points.  Waddell had seven criminal history points before the application of status points.  He originally received two status points, but under the amendment he only receives one, reducing his total criminal history score from 9 to 8.

As Probation and the United States note, however, this did not change his criminal history category or the applicable guideline range, both of which remain the same.  Because his guideline range did not change, he is not eligible for a reduction in sentence.  Additionally, his original and current guideline range are both 188 to 235 months, but he received a 135-month

sentence because of the court's downward variance, as already noted.  Pursuant to U.S.S.G.

§ 1B1.10(b)(2)(A), the court may not impose a sentence below the amended guideline range,

except in certain circumstances not present here.  Thus, he is not eligible for relief under Part A.

With regard to Part B of Amendment 821, that applies only to defendants who had zero

criminal history points and meet other criteria, as well.  As noted above, however, Waddell has

more than zero criminal history points. Accordingly, he is not eligible for relief under Part B of

the Amendment.  Any request for relief under Amendment 821 will be denied.

### III.  CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Waddell's motion for a reduced

sentence based on the compassionate release statute (Dkt. Nos. 262) is DENIED.  Additionally,

the court DENIES Waddell relief under Amendment 821 to the U.S. Sentencing Guidelines.  To

the extent that it may affect his custody status within the Bureau of Prisons, the court notes that

Waddell's criminal history score was reduced from 9 to 8, but it did not result in a change to his

criminal history category or his guideline range.  The clerk is directed to provide a copy of this

order directly to Waddell, to all counsel of record, and to the United States Probation Office.

Entered: May 9, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge